## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Constance Smith and Courtney
Ellington,

                    Plaintiffs,      Case No. 1:16-cv-4017-MLB

v.

WBY, Inc., et al.,

                    Defendants.

_____/

## **OPINION & ORDER**

Plaintiffs Constance Smith and Courtney Ellington sued to recover unpaid minimum wages guaranteed by the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, *et seq.* ("FLSA"). The parties jointly moved to settle. (Dkt. 82.) On May 17, 2021, the Court approved the FLSA settlement, finding Plaintiffs are prevailing parties within the meaning of the FLSA. (Dkts. 83; 82 at 1.) Plaintiffs then filed two fee petitions—one for Ainsworth G. Dudley and one for Jones & Walden LLC. (Dkts. 84; 85.) Defendants filed responses contesting the amounts requested. (Dkts. 90; 91.)

## I.   Background

Defendant WBY owns and operates a strip club in the Atlanta area. A number of dancers, bartenders, and waitresses sued Defendant WBY and its co-defendants (owners and employees of Defendant WBY), claiming Defendants paid them (or failed to pay them) in violation of the FLSA.  On February 5, 2016, Defendant WBY filed a voluntary petition for relief under Chapter 11 of the Title 11 of the United States Code, preventing the filing of any district court actions until the Bankruptcy Court authorized such action.  (*In re: WBY, Inc.*, No. 16-52291-JRS, Bk Dkt. 1.)[1]  Plaintiffs are two waitresses who worked at the strip club.  They had not previous filed claims against Defendants and thus initiated their FLSA claims in the Bankruptcy Court by filing proofs of claims. Defendants never contested liability.  (Dkt. 91 at 3.)   According to Defendants, with the filing of the Rule 16(f) Preliminary Joint Plan, Defendants offered to stipulate that: (1) Plaintiffs were misclassified; (2) Defendant WBY was liable for the misclassification; and (3) Defendant WBY was liable for failing to pay Plaintiffs' minimum wage, liquidated,

---

[1] When referencing to the bankruptcy docket, the Court will cite "Bk Dkt."

for the hours and dates worked during the 3-year damages period.  (Dkts. 91 at 3; 42 at 7.)  On October 24, 2016, Defendant WBY filed its initial Plan of Reorganization and Disclosure Statement, resolving certain claims.  (Bk Dkt. 141.)  Under that Plan, if a claimant chose to opt-in, she became part of Class D.  If a claimant chose to opt-out, she became a part of Class C and did not receive any settlement.

Plaintiffs opted out of Defendant WBY's Plan and became Class C claimants.  (Bk Dkts. 277; 278.)  Plaintiffs and other Class C claimants also objected to the Confirmation of Plan of Reorganization.  (Bk Dkt. 393.)  On December 20, 2016, Defendant WBY filed a revised Plan of Reorganization, which was confirmed by the Bankruptcy Court.  (Bk Dkt. 426.)  This plan created a group of 16 Class C claimants—specifically, 2 waitresses (Plaintiffs) and 14 entertainers.  (Bk Dkt. 428 at 1.)  It also established a reserve account for Class C claims and required Defendant WBY to fund the reserve account.  (*Id.* at 2.)  The Bankruptcy Court ordered mediation for Class C claimants, but the mediation was unsuccessful.  (Bk Dkt. 487.)  Plaintiffs were deposed regarding damages in January and February 2017.  On October 16, 2017, Defendant WBY moved for an order estimating the correct value of Class C claims needed

to satisfy the requirements of the Reserve Account ordered in Defendant WBY's Plan. (Bk Dkt. 560.) On October 29, 2019, the Bankruptcy Court issued an order on Defendants' motion for estimation and setting reserve for Class C claimants under the Plan. (Bk Dkt. 708.)

On November 27, 2016, Plaintiffs filed a complaint against Defendants in this Court. (Dkt. 1.) Defendants answered Plaintiffs' amended complaint admitting Plaintiffs worked at Follies and were not paid the required minimum wage. (Dkt. 35 ¶ 1.) Discovery ran from January 6, 2020 through August 1, 2020. (Dkt. 43.) On October 2, 2020, the Court ordered the parties to mediation before Magistrate Judge Salinas. (Dkt. 77.) The parties agreed to settle Plaintiffs' claim in November 2021. (Dkt. 82.) Attorneys Ainsworth Dudley and Jones & Walden then filed separate fee petitions, requesting nearly $620,000 in attorneys' fees and $8,500 in costs. (Dkts. 84; 85.) The Court grants in part and denies in part those motions.

## II.   Standard of Review

Under the FLSA, a court "shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by defendant, and costs of the action." 29 U.S.C. § 216(b). "The

starting point for determining . . . a 'reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate.'" *Bivins v. Wrap It Up, Inc.*, 548 F.3d 1348, 1350 (11th Cir. 2008) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  "The product of these two figures is the lodestar."  *Id.* (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565–66 (1986)).  The lodestar can be adjusted.  *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994).  The Court has discretion in determining the amount of an award, but "[t]he court's order on attorney's fees must allow meaningful review [and] must articulate the decisions it made, give principled reasons for those decisions, and show its calculation."  *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1304 (11th Cir. 1988).  "If the court disallows hours, it must explain which hours are disallowed and show why an award of [the] hours would be improper." *Id.* (citing *Hill v. Seaboard Coast Line R. Co.*, 767 F.2d 771, 775 (11th Cir. 1985)); *see also Bivins*, 548 F.3d at 1351 (reductions to requested hours must be concisely and clearly explained).  "Ultimately, the computation of a fee award is . . . an exercise of judgment, because there is no precise rule or formula for making these determinations."  *Embree v. Medicredit,*

*Inc.*, 752 F. App'x 697, 699 (11th Cir. 2018) (quoting *Villano v. City of Boynton Beach*, 254 F.3d 1302, 1305 (11th Cir. 2001)).  The district court is "an expert on the question and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of testimony of witnesses as to value."  *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940).[2] Plaintiffs, as the parties seeking fees, bear the burden of demonstrating the reasonableness of the attorney hours worked and the rates claimed. *See Hensley*, 461 U.S. at 437.  A prevailing plaintiff in an FLSA case is also entitled to "costs of the action."  29 U.S.C. § 216(b); *see also Santillan v. Henao*, 822 F. Supp. 2d 284, 301 (E.D. N.Y. 2011) ("As a general matter, a prevailing plaintiff in an action under the FLSA . . . is entitled to recover costs from the defendant.").

---

[2] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this court adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

## III. Discussion

### A.    Mr. Dudley

Mr. Dudley seeks $199,894.50 in attorneys' fees and $1,280 in costs.[3]  (Dkts. 84-1; 95.)

### 1.    Reasonable Hourly Rate

"A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Loranger*, 10 F.3d at 781 (citing *Norman*, 836 F.2d at 1299); *see also Weissinger v. Murray*, No. 1:06-CV-1544, 2009 WL 1971612, at *4 (N.D. Ga. July 2, 2009) ("Prevailing market rates are those rates that are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.")  "Generally, the 'relevant legal community' is that of the place where the case is filed." *Spurlock v. Complete Cash Holdings, LLC*, No. 4:19-CV-219, 2021 WL 1960634, at *3

---

[3] Mr. Dudley originally sought a fee award of $220,365 for 489.70 hours worked.  (Dkts. 84 at 1; 84-1 at 17.)  But Defendants' response identified only 444.21 hours (equating to $199,894.50 in fees).  (Dkt. 91 at 15.) Plaintiffs admit their error and accept Defendants' recalculated totals. (Dkt. 95 at 4.)

(N.D. Ga. May 14, 2021) (quoting *Cullens v. Ga. Dep't of Transp.*, 29 F.3d 1489, 1494 (11th Cir. 1994)).

An attorney's normal billing rate "is the best evidence of his [or her] market rate, although that information is not necessarily conclusive." *Weissinger*, 2009 WL 1971612, at *4; *see also Dillard v. City of Greensboro*, 213 F.3d 1347, 1354 (11th Cir. 2000) ("What [an attorney] charges clients is powerful, and perhaps the best, evidence of his [or her] market rate.") Reasonableness, however, does not require the parties to choose the cheapest attorneys. *See Johnson v. Univ. Coll. of Univ. of Ala. in Birmingham*, 706 F.2d 1205, 1208 (11th Cir. 1983). The court can look either to affidavits or to "its own knowledge and experience concerning reasonable and proper fees" to form an "independent judgment" of the reasonableness of the hourly rate. *Loranger,* 10 F.3d at 781; *Norman*, 836 F.2d at 1303 ("It is perfectly proper to award attorney's fees based solely on affidavits in the record."). "[T]he court cannot simply substitute its own judgment for uncontradicted evidence without an explanation and record support." *Weissinger*, 2009 WL 1971612, at *4.

Plaintiffs contend Mr. Dudley's hourly rate of $450 is "well within the range of rates in the Atlanta Market for an FLSA litigator who has

practiced for 30 years." (Dkt. 84-1 at 5.)  Plaintiffs claim this rate is supported by (1) Mr. Dudley's declaration, (2) expert testimony of Harlan Miller, Esq., (3) the hourly rate of $450 already awarded by Judge Sacca, and (4) Larry Pankey's declaration.  (Dkts. 84-1 at 13; 95 at 3.)

The Court agrees.  Mr. Dudley received his B.A. from the University of Georgia in 1986 and J.D. from Mercer Law School in 1990.  (Dkt. 84-2 ¶ 14.)  He has been a member of the Georgia Bar in good standing since 1990.  (*Id.* ¶ 15.)  Mr. Dudley has practiced employment law for thirty years, focusing almost exclusively on FLSA cases for the last fifteen years.  (*Id.* ¶ 17.)  He has litigated and arbitrated hundreds of claims under the FLSA, including misclassification cases.  (*Id.* ¶ 19.)  For FLSA work, Mr. Dudley is typically compensated on a contingency fee basis.  (*Id.* ¶ 23.)  His typical agreement (and his agreement with Plaintiffs) permits him to recover 35% of Plaintiffs' recoveries or his hourly rate for the time billed.  (*Id.* ¶¶ 23–24.)  When Mr. Dudley started this case, his hourly rate was $450.  (*Id.* ¶ 23.)  Mr. Pankey, another employment attorney, testified by declaration that he is "very familiar with Mr. Dudley's reputation, litigation skills and legal ability as well as the reputation of his firm." (Dkt. 95-2 ¶ 7.)  According to Mr. Pankey, he and

Mr. Dudley "have very similar practices, work at similar firms and litigate against many of the same employers." (*Id.*)  Based on his experience, Mr. Pankey believes "a rate of $450 per hour for Mr. Dudley's work is well within the range of hourly rates for attorneys of comparable skill and reputation." (*Id.*)  Indeed, he says Mr. Dudley could reasonably charge "in excess of $500 an hour." (*Id.*)  The Court, relying on affidavits and its own experience, finds Mr. Dudley's rate reasonable.

### 2.    Reasonable Number of Hours

Mr. Dudley can only recover fees for hours "reasonably expended" during litigation.  *Loranger*, 10 F.3d at 782.  The number of hours is reviewed by the "hour-by-hour rule" set forth by *Norman*.  *Id.* ("Implicit in the *Norman* hour-by-hour rule is the assumption that a district judge can feasibly and expeditiously engage in such a precise review.")  "[T]he court exercises its discretion in determining what constitutes reasonable hours." *Am. Atheists, Inc. v. City of Starke*, 509 F. Supp. 2d 1221, 1226 (M.D. Fla. 2007) (citing *Gray v. Lockheed Aeronautical Sys, Co.*, 125 F.3d 1387 (11th Cir. 1997)).

Plaintiffs contend they have provided detailed time records showing when and how each hour was spent.  (Dkt. 84-1 at 13.)  They also say Mr.

10

Dudley exercised billing judgment by voluntarily reducing all hours deemed "excessive, unnecessary and redundant" and time spent litigating discrete and unsuccessful claims. (*Id.* at 16.) They argue their fees were largely driven by Defendants' intense resistance to paying their claims in the Bankruptcy Court and they should not forgo fees incurred because of Defendants' obstructionist litigation. (*Id.* at 15.)

Defendants contend Mr. Dudley's fee award should be reduced because of improper inclusion of fees for: (1) non-compensable bankruptcy work; (2) work on behalf of Class C and D entertainers; (3) impermissible block billing/vague entries; and (3) clerical/administrative work. (Dkt. 91 at 14.) First, Defendants argue pre-judgment Bankruptcy fees are not recoverable in FLSA actions. (*Id.* at 16.) Defendants contend Mr. Dudley incorrectly argues the fees are justified and recoverable because Defendants waited until the case was ready for trial to settle and filed at least seven motions in the Bankruptcy Court. (*Id.* at 17.) Defendants argue, even if they did aggressively defend the case, that does not affect whether bankruptcy fees and costs are recoverable in an FLSA case asserted by unsecured creditors. (*Id.*) Defendants, relying on *Levin v. Levans, Inc.*, No. 08-61730-CIV, 2010 WL 1571192 (S.D. Fla. Mar. 15,

2010), contend Plaintiffs must show the bankruptcy work was either critical in achieving acknowledgment of liability or necessary to have a settlement entered in the case to recover bankruptcy fees and costs. (*Id.* at 18.)

In *Levin*, the court concluded "counsel's work to protect his clients' claims during the pendency of [the defendant's] bankruptcy petition warrant[ed] reimbursement." 2010 WL 1571192, at *2. But the court cabined its finding by concluding such fees were only recoverable because "the legal work performed by [p]laintiffs' counsel in the bankruptcy action was *critical* to achieving [the defendant's] acknowledgment of liability and ultimately a settlement in this case." *Id.* (emphasis added). Similarly, in *Felker*,[4] the court found the plaintiffs were not entitled to attorneys' fees for legal work performed in the defendant's subsequent bankruptcy action because such work was not a prerequisite for determining FLSA liability and thus recovery of those fees should be addressed in the post-judgment collection process. 584 F. Supp. 2d at 1121–22.

---

[4] *Felker v. Southwestern Emergency Med. Serv., Inc.*, 584 F. Supp. 2d 1120 (S.D. Ind. 2008).

The Court agrees with this analysis.  The fee provision of the FLSA provides that a district court "in such action shall . . . allow a reasonable attorney's fee to be paid by defendant."  29 U.S.C. § 216(b).  It does not limit attorneys' fees to certain motions, certain claims, or provide any further guidance.  There is no logical reason to preclude fees incurred in a bankruptcy proceeding, provided that proceeding was a necessary step on the road to protecting a claim so it could be asserted before the district court, and this Court will not read such a limitation into the fee provision. On the other hand, a bankruptcy proceeding can include collateral matters not directly part of an FLSA recovery, and the Court will not expand the fee provision to allow recovery of those fees.  No one would argue a successful FLSA claimant cannot recover fees for an attorney's work before filing an FLSA complaint, like pre-litigation discovery, the investigation of a client's claims, or unsuccessful pre-filing settlement efforts.  That such legal work occurred in the context of a bankruptcy proceeding necessary to protect subsequent claims should not render pre-litigation legal work unrecoverable.

The Court concludes an attorney's work to protect his or clients' claims during the pendency of a defendant's bankruptcy petition warrant

reimbursement.   To rule otherwise would dissuade attorney's from protecting employees' claims in bankruptcy or, alternatively, could incentivize non-compliant employers to use bankruptcy as a means of avoiding FLSA liability.   By allowing the recovery of attorneys' fees, the FLSA furthers the statute's goal of protecting employees' right to fair pay by encouraging lawyers to accept FLSA clients without consideration of their clients' immediate ability to pay.  *See Grochowski v. Ajet Const. Corp.*, No. 97 CIV. 6269, 2002 WL 465272, at *2 (S.D.N.Y. Mar. 27, 2002) ("The purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances.").  To preclude attorneys' fees incurred in necessary bankruptcy proceedings would undermine the purpose of the fee provision.  The Court thus concludes work by Mr. Dudley related to Plaintiffs' proofs of claims, confirmation of the plan, motion to lift stay, and reserve escrow is compensable since that work was necessary to assert, protect, and move forward Plaintiffs' claims in this Court.  This is especially true since the bankruptcy case was filed before this case, so Plaintiffs had to go to the Bankruptcy Court to preserve their claims.  The rest of the bankruptcy work, such as hours

14

spent on Plaintiffs' motion to convert debtor's chapter 11 plan into chapter 7 and motion for contempt, was not critical in determining liability, wages owed, or the ultimate settlement.   Those fees are not recoverable.  But, having reviewed Mr. Dudley's time entries, the Court finds Mr. Dudley has already removed that time.

Second, Defendants contend Mr. Dudley's hours must be reduced to exclude bankruptcy work performed on behalf of Class C and D entertainers in other cases.  (Dkt. 91 at 22.)  Defendants argue most of the bankruptcy fees sought are for hours performed on behalf of all (or a combination of) 46 Class C and Class D claimants.  (*Id.*)  Plaintiffs are different than other Class C and D claimants since they are the only claimants who exclusively worked as waitresses, they did not pay "house fees," the issue of tip-pooling is less questionable, and Defendant had no records of hours worked for waitresses.  (*Id.* at 22–23.)  According to Plaintiffs, they are not seeking any recovery for work performed exclusively for other plaintiffs.  (Dkt. 95 at 8.)  Plaintiffs contend "at no time will there be a double recovery for these fees" because "if they are awarded here, they will not be requested later."  (*Id.* at 8.)

"Time expended independent of the relevant federal litigation is not compensable. The Supreme Court has clearly stated that '[t]he time that is compensable . . . is that reasonably expended *on the litigation.*'" *Loranger*, 10 F.3d at 782 (citing *Webb v. Board of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 242 (1985)). The Court thus will not award time not expended on ***this*** litigation. The Court has gone through Mr. Dudley's fee entries and identified the entries for which he did not provide sufficient detail to conclude the work was specific to Plaintiffs' claims or a necessary part of their FLSA claims (202.04 hours). Understanding Plaintiffs obtained some benefit from that "collective work" and accepting Mr. Dudley's representation that the hours do not include time spent exclusively for other plaintiffs, the Court awards Mr. Dudley only the Plaintiffs' pro-rata share for bankruptcy work that was not specifically tailored to Plaintiffs. The Court will thus reduce the attorneys' fees by $86,965.04 (that is, 44/46ths) to remove the pro-rata share for Mr. Dudley's other clients.[5] At this point in the collective

---

[5] Mr. Dudley likely can recover those shares when (and if) the other claimant's successfully resolve their FLSA claims. He just cannot recover all of it now.

process, Mr. Dudley may only recover Plaintiffs' pro rate share (that is, 2/46ths of the collective expense).

Third, Defendants argue the fee award should be reduced for any block-billed or vague time entries.  (Dkt. 91 at 25.)  "'Block billing' occurs when an attorney lists all the day's tasks on a case in a single entry, without separately identifying the time spent on each task." *Ceres Envtl. Servs., Inc. v. Colonel McCrary Trucking, LLC*, 476 F. App'x 198, 203 (11th Cir. 2012).  The Supreme Court has said, "the fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates. The applicant . . . should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437.  "[R]eductions are also appropriate where imprecision in billing records makes it difficult for a district court to establish whether the amount of time spent on any one task was reasonable. This occurs where entries are vague [or] fail to identify an individual's contribution to the enumerated task." *Millie v. City of Savannah*, No. 4:18-cv-117, 2020 WL 4041118, at *6 (S.D. Ga. July 16, 2020).

Although Plaintiffs disagree as to whether most of the entries are block-billed or vague, Plaintiffs' counsel separated and re-submitted the billing with more detail for most entries.  (Dkt. 95 at 9–11.)  While these revisions fixed some issues with block-billing and vagueness, the Court finds certain time entries still too imprecise for the Court to determine their reasonableness.  These entries include (1) the 10-24-16 entry billing 1.4 hours for "[r]evised and edited complaint and reviewed order granting relief from stay"; (2) the 1-18-16 entry billing .5 hours for "[d]iscovery conference with Jones and Danowitz"; (3) the 4-10-17 entry billing .01 hours for "[t]eleconference with counsel re motion to enlarge time"; (4) the 12-20-17 entry billing .1 hours for "[t]eleconference with Ellington re status"; (5) and the 5-15-18 entry billing .1 hours for "[p]repared correspondence to client re status."  (*Id.*)  The Court reduces the fee award by $959.50 to remove these fees.

Fourth, Defendants argue the fee award should be reduced for clerical and administrative work.  (Dkt. 91 at 27.)  "[A] fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment."

*Norman*, 836 F.2d at 1306.  An attorney may not "recover attorney's fees for time spent on work that is secretarial or clerical in nature, like: filing or mailing documents; organizing files; administrative phone calls; and scheduling." *Millie*, 2020 WL 4041118, at *9.  Defendants contend 7.5 hours billed by Mr. Dudley are clerical. (Dkt. 91-6.)  Plaintiffs concede .4 hours billed may be considered clerical or administrative work. (Dkt. 95 at 12 n.6.)  Plaintiffs' argument for the other 7.1 hours simply states those hours "are not impermissible clerical or administrative tasks." (*Id.* at 11–12.)  The Court disagrees in part.  Time spent preparing attorney-client agreements and consent forms; calendaring correspondence; preparing invoices; and preparing certificate of interested persons is clerical.  But time spent preparing and editing notices of depositions; reviewing bills; and reviewing docket entries is not clerical.  Applying this, the Court reduces the fee award by $585.

In all, the Court reduces Mr. Dudley's fee request by $88,509.54.

### 3.   Costs

A prevailing party in an FLSA case is entitled to "costs of the action."  29 U.S.C. § 216(b).  Whether to award allowable costs and in what amount is a matter within the Court's discretion.

Plaintiffs seek recovery for two items: (1) a $400 filing fee and (2) Harlan Miller's transcript in the amount of $880.  (Dkt. 84-1 at 25.) Neither Defendants nor the Court can discern the date or type of document associated with the $400 filing fee.  Plaintiffs simply state, "[t]he filing fee" and contend "Defendants' objection to paying the filing fee as costs to a prevailing party is a small example of why this case has been so time consuming to litigate." (Dkts. 84-1 at 25; 95 at 12 n.7.)  The Court will not award costs for an unnamed filing fee.

As to Mr. Miller's transcript, Defendants argue the fee does not fall within the purview of the statute.  (Dkt. 91 at 28.)  Under 29 U.S.C. § 1920(2), a court may tax as costs "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case." 29 U.S.C. § 1920(2).  Plaintiffs contend the transcript was necessarily obtained for use in the case because it was used to estimate the amount of attorneys' fees to escrow in the bankruptcy case and Defendants used the transcript in opposition to Plaintiffs' motion for fees and costs.  (Dkts. 84-1 at 6; 95 at 12.)  "The burden lies with the challenging party to show that the depositions were not related to an issue in the case at the time that the deposition was taken." *Responsible Me, Inc. v. Evenflo Co., Inc.*, No. 06-

61736-CIV, 2009 WL 528247, at *7 (S.D. Fla. March 2, 2009).  Defendants have failed to show the transcripts were not necessary for use in the case. The Court thus awards $880 in costs.

### B.    Jones & Walden LLC

Jones & Walden seeks $390,787 in attorneys' fees and $7,303.76 in costs.  (Dkts. 85; 94 at 2.)  Eleven attorneys (including Leon Jones), four paralegals, and one legal assistant worked on the case.

### 1.    Attorney-Client Agreement

Defendants contend Mr. Jones was never retained by, and has no fee agreement with, Plaintiffs Smith or Ellington, and therefore cannot recover fees as an attorney.  (Dkt. 90 at 2.)  Defendants request that any award be treated as costs to Mr. Dudley, rather than as prevailing party attorneys' fees.  (*Id.* at 3.)  Plaintiffs contend (1) this issue is barred by collateral estoppel or, alternatively, (2) the Court should reject Defendants' argument on the merits because under Georgia law and Mr. Dudley's written engagement, Mr. Dudley was authorized to utilize the assistance of investigators, paralegals, law students, or associates licensed to practice law in Georgia.  (Dkt. 94 at 3–4.)

Plaintiffs claim Defendants' argument is precluded by collateral estoppel because the Bankruptcy Court denied Defendants' motion asserting Jones & Walden had not been engaged by Plaintiffs. (Bk Dkt. 630.)   The motion before Judge Sacca was Defendants' motion for a determination of invalidity of Mr. Dudley's claimants' proofs of claim. (*Id.*)   In that motion, Defendants argued neither Mr. Jones nor Mr. Dudley had permission to execute proofs of claim on behalf of the Dudley Claimants.  (*Id.* at 10.)  A proof of claim filed in a bankruptcy case must be executed by the creditor or by the creditor's ***authorized agent***.  *See* Fed. R. Bankr. P. Rule 3001(b) ("A proof of claim shall be executed by the creditor or the creditor's authorized agent except as provided in Rules 3004 and 3005.").  In his oral ruling, Judge Sacca stated:

> [Mr. Dudley's Contract for Services] does provide for Mr. Dudley to have associates and I believe that Mr. Jones has – basically Mr. Dudley associates Mr. Jones here and so I think Mr. Jones is certainly within the scope of this [Contract for Services] and Mr. Jones and Mr. Dudley have been active, and we've all relied on that . . .

> Mr. Dudley was retained to represent these people in connection with fair labor standards of practice claims, and, you know, I think the language is broad enough to include this bankruptcy case and he's authorized to protect their interest . . .

(Dkt. 94-3 at 2–3.)

22

Plaintiffs simply state the Court should apply collateral estoppel and reject Defendant's recycled argument because Defendants "raised the issue, briefed it, presented oral argument on it, and lost on the issue." (Dkt. 94 at 3–4.)  "The party seeking to invoke collateral estoppel bears the burden of proving that the necessary elements have been satisfied." *Matter of McWhorter*, 887 F.2d 1564, 1566 (11th Cir. 1989).  Plaintiffs do not even list the necessary elements.  The Court thus finds Plaintiffs' argument about collateral estoppel unpersuasive.

In the absence of estopple, the Court must determine whether there is an attorney-client relationship between Jones & Walden and Plaintiffs. The Court finds there is no such relationship as to Plaintiff Smith, but there is a relationship as to Plaintiff Ellington.  Before an attorney can recover fees and costs under the FLSA, there must be evidence of an attorney-client relationship.  *See Miller v. Amusement Enters., Inc.*, 426 F.2d 534, 538 (5th Cir. 1970) ("[W]hat- and all- that is required is the existence of a relationship of attorney and client.").  In Georgia, although "an attorney-client relationship generally is a matter of express contract, it may be implied from the conduct of the parties." *Cleveland Campers, Inc. v. R. Thad McCormack, P.C.*, 635 S.E.2d 274, 276 (Ga. Ct. App. 2006).

"[T]he employment is sufficiently established when it is shown that the advice or assistance of the attorney is sought and received in matters pertinent to his profession." *Guillebeau v. Jenkins*, 355 S.E.2d 453, 457 (Ga. Ct. App. 1987).

> While the payment of a fee is relevant to the inquiry and may in some circumstances be controlling, an attorney-client relationship may be found to exist where no fee is paid[,] and the payment of a fee does not necessarily demonstrate the existence of the relationship. All that is necessary is a "reasonable belief" on the part of the would-be client that he or she was being represented by the attorney. A reasonable belief is one which is reasonably induced by representations or . . . conduct on the part of the attorney.

*Calhoun v. Tapley*, 395 S.E.2d 848, 849 (Ga. Ct. App. 1990) (internal quotations and citations omitted).

As to Plaintiff Smith, although Mr. Dudley's written engagement discusses obtaining assistance, that does not create an attorney-client relationship. Such clause does not create a reasonable belief on the part of Plaintiff Smith that she is being represented by Mr. Jones. The fee petition provides no evidence Plaintiff Smith ever retained Mr. Jones, or his firm. None of Mr. Jones' time entries show he ever spoke directly to Plaintiff Smith which is consistent with Plaintiff Smith's testimony of never meeting Mr. Jones. (Dkt. 90-4 at 3 (at 110:20–111:6).) It appears

Mr. Jones only communicated with Mr. Dudley.  All of the Jones & Walden time entries were also billed to the Dudley Law Firm LLC, showing Jones & Walden acted more as a bankruptcy consultant than an attorney.  How could Plaintiff Smith be induced to believe Mr. Jones was her attorney if she never met him or communicated with him?  The Court thus cannot award attorneys' fees to Mr. Jones or his firm with respect to work done on behalf of Plaintiff Smith on the grounds he was her lawyer.  Instead, the Court will treat Jones & Walden's fees for Plaintiff Smith's work as costs attributable to Mr. Dudley.[6]

As to Plaintiff Ellington, she testified that although she could not remember if she met him, she believes she has met him and she signed an engagement letter for him to be her attorney.  (Dkt. 90-5 at 3:23–4:1, 4:24–5:10, 6:8.)  Plaintiff Ellington testified she signed one attorney engagement agreement which covers Mr. Dudley and Mr. Jones who were both working on a percentage.  (*Id.* at 5:2–6:3.)  Under Georgia law, all that is necessary is a "reasonable belief" on the part of the would-be client that he or she was being represented by the attorney.  *Calhoun*, 395

---

[6] If he deems it appropriate, Mr. Dudley can file a petition for costs for work done by Jones & Walden for Plaintiff Smith's benefit within 14 days from the entry of this Order.

S.E.2d at 849.  Plaintiff Ellington had a reasonable belief Mr. Jones was her attorney.  The Court thus finds there is an attorney-client relationship as to Mr. Jones, Jones & Walden, and Plaintiff Ellington. Because Jones & Walden can only recover attorneys' fees for work done on behalf of Plaintiff Ellington, the Court will apply an across-the-board reduction of 50% to the fees to be compensated.  The Court will apply this reduction after analyzing the reasonable hourly rates and reasonable number of hours.

### 2.    **Reasonable Hourly Rates**

Plaintiffs seek each billing person's current hourly rate.  *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 547 (S.D. Fla. 1998), *aff'd*, 899 F.2d 21 (11th Cir. 1990) ("The use of current rates, as opposed to historical rates, compensates counsel for inflation and delay in receipt of payment.").  Plaintiffs seek fees for eleven attorneys, four paralegals, and one legal assistant.  (Dkt. 85-2 ¶ 44.)  Plaintiffs support these individuals' hourly rates by listing each person's position and years in practice.  (Dkt. 94-4 at 1.)  Three of the attorneys, including Mr. Jones, are partners.  (*Id.*)  The hourly rates for the partners range from $375 to $400.  (*Id.*)  Eight of the attorneys are associates.  (*Id.*)  The hourly rates

for the associates range from $225 to $275.  (*Id.*)  All four paralegals'
hourly rates are $125.  (*Id.*)  And the legal assistant's hourly rate is $85.
(Dkt. 85-2 ¶ 44.)  After reviewing the attorneys' and paralegals' years of
experience and relevant case law, the Court determines these hourly
rates are reasonable.  *See Thomas v. Grease Guard, LLC*, No. 1:14-CV-
619, 2018 WL 1137183, at *2 (N.D. Ga. Jan. 5, 2018) (finding rates for
the partner and associate of $400 and $275 consistent with the prevailing
market rates in this legal community); *Walker v. Commissioner, Soc. Sec.
Admin.*, 844 F. App'x 104, 106, 109 (11th Cir. 2021) (looking to other
district court cases to determine "that $125 per hour was a reasonable
rate" for work comparable to that of a paralegal); *Nat'l Life Ins. Co. v.
Alembik-Eisner*, 582 F. Supp. 2d 1362, 1372 (N.D. Ga. 2008) (finding
paralegal fees of $125/hour reasonable); *Classic Harvest LLC v.
Freshworks LLC*, No. 1:15-cv-2988, 2017 WL 393730, at *2 (N.D. Ga. Jan.
30, 2017) (finding legal assistant's hourly rate of $125 reasonable in the
Atlanta market for legal services).

### 3.    Reasonable Number of Hours

Plaintiffs contend the hours are reasonable and recoverable
because, among other things, the attorneys' fees claim is well

documented, Plaintiffs should not be forced to forgo fees incurred because of Defendants' aggressive tactics, Plaintiffs' counsel exercised billing judgment by voluntarily reducing fees sought, and this case raised difficult legal questions.  (Dkt. 85-1 at 10–14, 17.)

Defendants contend the fee award should be reduced because of improper inclusion of fees for: (1) non-compensable bankruptcy work; (2) clerical/administrative work; (3) impermissible block billing/vague entries; (4) excessive hours billed for "intraconferences"; and (5) work on behalf of non-prevailing party plaintiffs.  (Dkt. 90 at 11–24.)   First, as discussed above, to recover fees for bankruptcy work, Plaintiffs must show the bankruptcy work was either critical in achieving acknowledgment of liability or necessary to have a settlement entered in the case to recover bankruptcy fees and costs.  Plaintiffs thus cannot recover fees for general creditor representation (40.6 hours), work on Follies' contempt (53.1 hours), and the motion to convert (29.1 hours) since none of this work was critical in determining liability, wages owed, or the ultimate settlement of Plaintiffs' claims.  Plaintiffs, however, can recover the remainder of the bankruptcy work, including work on the motion to estimate claims since that work was necessary to guarantee

recovery in this Court.  The Court thus reduces the fee award by $38,372.76.

Second, Defendants contend the Jones Fee Petition includes time entries for (1) clerical and administrative tasks, (2) impermissible block billing and vague time entries, and (3) excessive hours for "intraconferences."[7]  (*Id.* at 21–24.)  As to clerical work, it is well-established that "a fee applicant is not entitled to compensation at an attorney's rate simply because an attorney undertook tasks which were mundane, clerical or which did not require the full exercise of an attorney's education and judgment." *Norman*, 836 F.2d at 1306.  "Work by paralegals is recoverable . . . only to the extent that the paralegal performs work traditionally done by the attorney."  *B&F Sys., Inc. v. LeBlanc*, No. 7:07-cv-192, 2012 WL 2529191, at *10 (M.D. Ga. June 29, 2012).  After reviewing the objected to time entries, the Court reduces the fees by $7,224.50.  This reduction is because of Plaintiffs agreed to cuts and time entries for events such as scheduling and calendaring.  (Dkt. 94

---

[7] The Court notes when Defendants object to Plaintiffs' time entries because they are intraconferences, Defendants state the reason for exclusion is "Blockbilling (intraconference)."  (*See generally* Dkt. 90-7.) The Court addresses these objections separately.

at 16 (Plaintiffs agreed to reduction of $6,769 for non-compensable clerical work).)

As explained above block billing is "inconsistent with an attorney's obligation to 'explain in discrete entries the nature of the work that they want a client or opposing party to pay them hundreds of dollars to perform,'" and "unnecessarily complicates review of attorney time sheets and warrants a reduction of the hours billed." *BJCC, LLC v. LeFevre*, No. 8:09-CV-551, 2011 WL 5597305, at *4 (M.D. Fla. Oct. 11, 2011) (quoting *Kearney v. Auto-Owners Ins. Co.*, 713 F. Supp. 2d 1369, 1377–78 (M.D. Fla. 2010)), *adopted by* 2011 WL 5597349, at *2 (M.D. Fla. Nov. 17, 2011). "Courts have . . . approved across-the-board reductions in block-billed hours to offset the effects of block billing." *Ceres*, 476 F. App'x at 203. After a thorough review of Plaintiffs' records, the Court finds the time entries do not constitute block billing. *See Miller's Ale House, Inc. v. Boynton Carolina Ale House, LLC*, No. 09-80918-CIV, 2011 WL 13108095, at *3 (S.D. Fla. Apr. 7, 2011) ("[W]hen multiple listed tasks in a billing entry are intertwined or related, 'including a thorough description of the activities performed clarifies, rather than obscures, the

record' and does not constitute improper block-billing." (quoting *Williams v. R.W. Cannon, Inc.*, 657 F. Supp. 2d 1302, 1312 (S.D. Fla. 2009)).

As for vagueness, timekeeping entries are vague where they are not of "sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 970 (D.C. Cir. 2004). After reviewing Plaintiffs' records and Defendants' supplemental descriptions, the Court reduces the fees by $1,115.[8] *See Drew v. Mamaroneck Capitol, LLC*, No. 5:17-CV-149, 2018 WL 3232779 (M.D. Ga. July 2, 2018) (accepting supplemental descriptions of time entries). This reduction is because of Plaintiffs agreed to cuts and time entries for events such as "[m]ultiple email exchanges (tolling agreement)" and "[c]onference with AGD re waitress claims (Smith and Ellington)." (*See generally* Dkt. 85-2.)

As to intraconferences, "attorneys must spend at least some of their time conferring with colleagues, particularly their subordinates, to ensure that a case is managed in an effective as well as efficient manner." *National Ass'n of Concerned Veterans v. Secretary of Def.*, 675 F.2d 1319,

---

[8] Plaintiffs agree $300 is non-compensable vague work. (Dkt. 94 at 16.)

1337 (D.C. Cir. 1982).   While "time spent in attorney conferences is generally compensable for each participant," the time entries for such conferences must provide sufficient detail "in order to determine the nature and need for the conference and, concomitantly, the reasonableness of the time expenditure." *Am. Charities for Reasonable Fundraising Regulation, Inc. v. Pinellas Cnty.*, 278 F. Supp. 2d 1301, 1315, 1319 (M.D. Fla. 2003); *see also Tchemkou v. Mukasey*, 517 F.3d 506, 512 (7th Cir. 2008) ("[A]ttorneys seeking reimbursement for internal meetings should identify explicitly the subject matter of their discussions so that [the Court] may assess whether the amount of time recorded was 'reasonably expended.'").  "This is of special concern" when, as here, "the plaintiffs seek reimbursement for a plethora of attorney conferences" that are described only "by reference to a particular phase of the litigation, such as 'telephone call with E.M. re: complaint.'" *Am. Charities*, 278 F. Supp. 2d at 1319.   The Court's review of Plaintiffs' records confirms Plaintiffs billed hours for tasks with surface-level descriptions like "t/c with AGD re strategy," telephone conference with AGD regarding discovery to debtor, and "[m]ultiple telephone conferences with AGD." (*See generally* Dkt. 85-2.)   Plaintiffs do not even contend this time was

32

reasonable but cite *America Charities* and claim Defendants grossly exaggerate the amounts of interconferences.  (Dkt. 94 at 14–15.)  This argument offers no guidance on the "nature [of] and need" for their hours of internal communications, nor does it address Defendants' contentions that such time was excessive.  *See Am. Charities*, 278 F. Supp. 2d at 1319.  Thus, the Court cannot determine the reasonableness of these billing entries.  *Compare Duckworth v. Whisenant*, 97 F.3d 1393, 1398 (11th Cir. 1996) (reduction of hours for "myriad of telephone conferences" warranted) and *Nail v. Shipp*, No. 17-195, 2020 WL 1670459, at *7 (S.D. Ala. Apr. 3, 2020) (finding a "50% across-the-board reduction" appropriate where, among other things, "the billing records reflect[] a multitude of overlapping conferences, email exchanges between counsel, phone calls, and other strategy sessions"), *with Williams*, 657 F. Supp. 2d at 1312 (plaintiff could recover fees for internal communications and conferences when the plaintiff showed that meetings were "reasonably necessary" and only billed for "one attorney at a time, not for each of the attorneys that attended the conference").  Having reviewed the entries, the Court concludes a 20% across-the-board reduction to the $2,952.50

fees included in the insufficient time entries for intraconferences is appropriate and reasonable.   The Court will thus reduce fees by $590.50.

Third, under the FLSA, only attorneys for the prevailing parties are entitled to a fee award.   Plaintiffs contend all attorneys' fees and costs incurred on behalf of these Plaintiffs should be awarded, despite that the time also benefitted Plaintiffs in other cases.   (Dkt. 85-1 at 16.) Defendants contend the fee petition improperly tries to lump-in fees from the "prevailing parties" in this action (Plaintiffs Smith and Ellington) with fees for non-parties who have not prevailed on any of their FLSA claims.   (Dkt. 90 at 2.)   The Court agrees.   Mr. Jones testified by declaration that the application for fees that his firm submitted is the bankruptcy work that was done on behalf of the Class C claimants.   (Dkt. 94-1 ¶ 15.) There are 16 Class C claimants.  "Time expended independent of the relevant federal litigation is not compensable. The Supreme Court has clearly stated that '[t]he time that is compensable . . . is that reasonably expended *on the litigation*.'"  *Loranger*, 10 F.3d at 782 (citing *Webb*, 471 U.S. at 242).   The Court will not award time not expended on **this** litigation.   The Court will thus only award a pro-rata share for bankruptcy work.   The Court thus reduces the attorneys' fees by

$300,548.71 (that is, 14/16ths) to reflect the pro rata share attributable to the other Class C claimants.

Based on this analysis, Jones & Walden can recover $42,935.53 in fees.  But because Jones & Walden does not have an attorney-client relationship with Plaintiff Smith, the Court will half this amount.  Jones & Walden can thus recover $21,467.77 in fees.

### 4.    Costs

A prevailing party in an FLSA action is entitled to "costs of the action."  29 U.S.C. § 216(b).  "Compensable costs are limited to those enumerated in 28 U.S.C. § 1920." *Watts v. Silverton Mortg. Specialists, Inc.*, No. 1:17-cv-3574, 2020 WL 9073526, at *10 (N.D. Ga. June 2, 2020) (citing *Williams*, 657 F. Supp. 2d at 1315 ("The costs recoverable by prevailing plaintiffs in FLSA cases under section 216(b) are limited to those costs enumerated in 28 U.S.C. § 1920.")).[9]  Plaintiffs seek recovery

---

[9] Section 1920 allows: (1) fees of the clerk and marshal; (2) fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) fees and disbursements for printing and witnesses; (4) fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) docket fees under section 1923 of this title; and (6) compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title. *See* 28 U.S.C. § 1920.

of (1) filing fees; (2) mileage; (3) online legal research; (4) PACER charges; (5) photocopy charges; (6) postage; and (7) transcript fees. (Dkt. 85-1 at 23.) Plaintiffs improperly seek fees for mileage, online legal research, PACER charges, and postage. *See Duckworth*, 97 F.3d at 1399 ("Upon further inspection, Plaintiff's affidavits appear to include costs such as general copying, computerized legal research, postage, courthouse parking fees and expert witness fees, which are clearly nonrecoverable."); *Willoughby v. Youth Villages, Inc.*, 219 F. Supp. 3d 1263, 1272–73 (N.D. Ga. 2016) (disallowing costs for the expenses of online legal research, local travel costs, expedited transcript fees). The Court thus will not award costs for these "expenses."

The Court will also not award costs for photocopy charges or transcript fees.

> To recover costs paid for trial transcripts, the requesting party must show that the transcripts were reasonably necessary for use in the action. To recover costs paid for deposition transcripts, the party must show that they were reasonably necessary and not simply incurred for convenience, to aid in thorough preparation, or for purposes of investigation only. Similarly, costs of photocopies necessarily obtained for use in the case are generally taxable, but again, the requesting party bears the burden of demonstrating that the copies were reasonably necessary.

36

*Lore v. Chase Manhattan Mortg. Co.*, No. 1:04-CV-204, 2008 WL 11320016, at \*14 (N.D. Ga. Nov. 14, 2008). The fee petition simply states, "[a]ll of these costs were reasonable and necessary." (Dkt. 85-1 at 23.) "Absent a specific showing of the purpose or use of the items obtained and the nature of the documents copied, [the plaintiff] cannot recover the expenses as set forth in his bill of costs and attached spreadsheet." *Lore*, 2008 WL 11320016, at \*15. The Court will not award fees for photocopy charges and transcript fees. Plaintiffs, however, may recover $191 in filing fees. (Dkt. 85-1 at 23.) *See Ewing v. Daystar Logistics, Inc.*, No. 4:13-CV-20, 2013 WL 12382357, at \*2 (N.D. Ga. Oct. 23, 2013) (allowing Plaintiffs to recover for filing fees).

## IV.   Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for an Award of Attorneys' Fees and Costs Under the FLSA for Ainsworth G. Dudley. (Dkt. 84.) The Court **ORDERS** Defendants to pay Mr. Dudley $111,384.96 in fees, the bulk of which is from Mr. Dudley's work on Plaintiffs' FLSA claim in this Court, specifically work on the complaint, discovery, Defendants' motion to dismiss, and settlement, and $880 in costs.

The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion for an Award of Attorneys' Fees and Costs Under the FLSA for Jones & Walden LLC.  (Dkt. 85.)  The Court **ORDERS** Defendants to pay Jones & Walden $21,467.77 in fees and $191 in costs.

**SO ORDERED** this 15th day of September, 2021.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE